# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

OLUDAYO ASHIPA,

                 : 

       Petitioner,                       Case No. 1:08-cv-879

                 :             District Judge Michael R. Barrett
    -vs-                            Magistrate Judge Michael R. Merz

ROBYN KNAB, Warden,

                 :

       Respondent.

---

## REPORT AND RECOMMENDATIONS

---

Petitioner Oludayo Ashipa brought this habeas corpus action pursuant to 28 U.S.C. § 2254 to obtain relief from his conviction and sentence in the Hamilton County Common Pleas Court to an aggregate ten-year sentence on two counts of theft, two counts of identity fraud, and one count of engaging in a corrupt enterprise. He pleads the following grounds for relief:

> **Ground One:** The State trial Court lacked jurisdiction and violated the 'Mandate Rule', when it proceeded in Re-sentencing Appellant Ashipa, on May 9th, 2006, prior to the Issuance of the Ohio Supreme Court's Mandate, in violation of Appellant Ashipa's Substantial due process rights & procedural due process rights under the fourteenth Amendment to the United States Constitution.

> **Ground Two**: The trial Court denied Appellant Oludayo Ashipa, his Substantive due process protection, and/or creating a 'Significant Risk' of prolonging Appellant Ashipa's Incarceration, by applying, State –vs- Foster, 109 Ohio St. 3d 1, to his sentence, in violation of the United States, Federal Ex Post Facto Clause/laws of the Constitution."

> **Ground Three**: The State trial Court denied Appellant Oludayo Ashipa his Fifth Amendment, Double Jeopardy Rights & Merger of

Sentence Doctrine Rights, under the fourteenth Amendment to the United State Constitution, along with his Statutory Rights (Merger of sentence Doctrine), which is codified, under the Ohio Multiple Count Statute (O.R.C.2941.25), forbidding cumulative sentences for the same Act/Transaction, when trial Court Sentenced Appellant Ashipa to 4 years, in trial Case No.B-040-1447 & 6 years in trial Case No.B-0403917, consecutive to one another with both Incidents used as the subject of a single Event/Continuous Corrupt Enterprise.

**Ground Four**: The State trial Court in Utilizing the remedy fashioned in State –vs- Foster, 109 Ohio St.3d 1, (i.e. judicial construction/remedies of statutes, preponderance of evidence, aggravating facts e.t.c.) which is neither Blakely-ized or Booker-ized, by the State Legislature, without a jury input, & consent fromthe defendant, can't survive the Sixth Amendment (trial by jury), Inspection, which 'Proscribe a Sentencing Scheme, which utilizes a Bifurcated Approach' .

**Ground Five:** The State trial Court erred and denied Appellant Oludayo Ashipa, his Substantive and procedural due process, as guaranteed by the fourteenth Amendment to the United States Constitution, when the trial court, failed to conduct a meaningful hearing, by ignoring Appellant Ashipa's Pre-sentence request, to withdraw his guilty pleas at Re-sentencing.


**Ground Six**: "The State trial court denied Appellant Oludayo Ashipa, his Substantive and due process rights, under the fourteenth Amendment to the United States Constitution, when the trial Court imposed a Mechanical Sentence, for offending/being Convicted of Ohio's Engaging in a Pattern of Corrupt activity statute, without regard to Appellant Ashipa's Culpability, and Individualized Assessment."

**Ground Seven**: "The state trial Court denied Appellant Oludayo Ashipa, his Substantive and due process rights, under the fourteenth Amendment, to the United states Constitution, when the trial Court failed to apply the Rule of Lenity, to Appellant Ashipa's sentence, which requires the imposition of minimum and concurrent sentences."

**Ground Eight**: "The State trial Court denied Appellant Oludayo Ashipa, his Substantive and procedural due process (Boykin Rights, 395 U.S. 238), under the fourteenth Amendment to the United States

Constitution, when a retroactive change in sentencing criteria, renders, Appellant Ashipa's guilty plea Involuntary and Uninformed.

**Ground Nine**: The State trial Court abused it (sic) discretion, violated Appellant Oludayo Ashipa's Equal Protection Rights, to the United States Constitution, and violated the 'Mandate Rule' Rights under the fourteenth Amendment to the U.S. Constitution, when it again imposed non-minimum, consecutive sentences on Appellant Ashipa, who had not served a prior prison term, against both the ruling of the First District, Court of Appeals, and the 'Mandate' of the Supreme Court of Ohio.

**Ground Ten**: "The State trial Court denied Appellant Oludayo Ashipa his Substantial (sic) & due process Rights, when trial Counsel's Conduct & Performance, was deficient and Prejudiced Appellant, in violation of Appellant's Sixth Amendment Rights, under the fourteenth Amendment to the United States Constitution; when trial Court permitted the State of Ohio to Amend Grand Jury Indictment, in trial Case No. B-0401447 & B-0403917, where defense counsel stood mute."

**Ground Eleven**: The trial Counsel rendered constitutional deficient (sic) performance and conduct contrary to Appellant Ashipa's Sixth and Fourteenth Amendment Rights, under the United States Constitution, when he advised his client to accept pleas of guilty under trial Case No. B-0401447 & B-0403917, due to counsel's failure to investigate, and be fully aware that, the affidavit supporting searches, either, non-existed, and/or were made under perjury, by Affiant, in violation of Appellant Ashipa's fourth, and Fourteenth Amendment Rights, under the United States Constitution; and had counsel properly advised Appellant Ashipa, such pleas of guilty would not had (sic) been entered

**Ground Twelve**: The trial Counsel was constitutionally deficient in conduct and performance, and prejudiced Appellant Ashipa substantially, invalidating his guilty pleas, when he failed to request 'Exculpatory Evidence' favourable to Appellant Ashipa, despite, Ashipa's repeated request, in violation of his fourth & Sixth Amendment Rights, as well as his due process rights, under the fourteenth Amendment, to the United States Constitution.

**Ground Thirteen**: Appellate Counsel erred to the prejudice of Appellant Ashipa, in violation of the Sixth Amendment, under the Fourteenth Amendment to the United States Constitution, when he

failed to recognize, assert, and/or raise as error that, the judgement entry, issued by the trial Court in Case No. B-0403917, on June 11th, 2007, is not in compliance with Criminal Rule 32(C), and, not a Final & Appealable Order, thus divesting the Court of Appeals, jurisdiction to consider, nor adjudicate on Appeal Case No. C-070436 & C-070457.

**Ground Fourteen**: Appellate Counsel erred to the prejudice of Appellant Ashipa, in violation of his Sixth Amendment Rights, under the Fourteenth Amendment to the United States Constitution, when he failed to recognize, assert, and/or raise as error that trial Court imposed a sentence, under State-Vs-Foster, 2006-Ohio-856, in violation of Appellant's due process. and Ex Post Facto.

**Ground Fifteen**: Appellate Counsel erred to the prejudice of Appellant Ashipa, in violation of his Fifth Amendment, Double Jeopardy Rights (Merger of sentence Doctrine), and his Sixth Amendment Rights, under the fourteenth Amendment to the United States Constitution, when he failed to recognize, assert, and/or raise as error that, the trial Court denied Ashipa, his Substantive rights, which prejudiced him, when the Court sentenced Appellant Ashipa, to 4 years in Case No. B-0401447, & 6 years in Case No. B-0403917, consecutive to one another, when both incidents used, as the subject of a single Event/Continous (sic) Corrupt Enterprise.

**Ground Sixteen**: Appellate Counsel erred to the prejudice of Appellant Ashipa, in violation of his Sixth Amendment Rights, under the fourteenth Amendment to the United States Constitution, when he failed to recognize, assert and/or raise as error that, trial Court failed to apply the Rule of Lenity, to Appellant Ashipa's sentence.

(Petition, Doc. No. 2). In response to the Petition, the Warden has filed a 110-page Answer (Doc. No. 16) and Petitioner has filed a 110-page Traverse (Doc. No. 35).

## Controlling Law

Rather than repeat controlling law in the analysis of each Ground for Relief, the Magistrate Judge will attempt at the outset a statement of controlling law which applies to several of the Grounds for Relief.

Federal habeas corpus relief is available only to address violations of the United States Constitution which may infect the conviction complained of. 28 U.S.C. §2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62 (1991). For example, this Court cannot consider whether any of the state courts made an error in deciding what a state statute means or whether the conviction violates the Ohio Constitution. A claim of error in the state court proceedings which does not state a claim under the Federal Constitution is said not to be cognizable in habeas corpus. Claims of that sort are to be dismissed without prejudice, i.e., without a ruling on the merits.

Respondent Warden claims that many of Petitioner's Grounds for Relief are procedurally defaulted. The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or

> demonstrate that failure to consider the claims will
> result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also Simpson v. Jones,* 238 F. 3rd 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that
> is applicable to the petitioner's claim and that the petitioner failed to
> comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of Ulster
> County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777
> (1979).
>
> Third, the court must decide whether the state procedural forfeiture
> is an "adequate and independent" state ground on which the state can
> rely to foreclose review of a federal constitutional claim.

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d, at 138.

When a state court has decided a federal constitutional claim on the merits, its decision is entitled to deference from the federal habeas court. That is, the decision cannot be overturned unless it is contrary to or an objectively unreasonable application of law clearly established by holdings of the United States Supreme Court. 28 U.S.C. § 2254(d); *Bell v. Cone*, 543 U.S. 447 (2005).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court

must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218. The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).


**Analysis**


**Ground One**


In his first Ground for Relief, Petitioner asserts that he was re-sentenced in the trial court on May 9, 2006, before the Ohio Supreme Court had issued its mandate of remand. Therefore, he claims, the trial court was without jurisdiction to sentence him.

This claim is not cognizable in federal habeas corpus. The question of what sort of process must issue from an Ohio appellate court to remand a case to a trial court is plainly a question of Ohio law. There is no federal constitutional right to insist that an Ohio trial court await issuance of an

appellate court mandate before its proceeds to carry out the judgment of the appellate court. Petitioner relies on *United States v. Moore*, 131 F.3d 595 (6th Cir. 1997)(Traverse, Doc. No. 35, at 5), but that case has nothing to do with any asserted constitutional right of a state defendant to release if a state trial court asserts jurisdiction over him on remand before the mandate is issued.

Apparently conceding that this claim raises a state law question, Petitioner argues, that a state law violation can rise to the level of a due process violation if it creates a serious risk of convicting an innocent person, (Traverse, Doc. No. 35, at 10, citing *Noling v. Bradshaw*, 2008 WL 320531. *25 (N.D. Ohio 2008)).  Judge Nugent stated that proposition of law in *Noling*, relying on *Neumann v. Jordan,* 84 F.3d 985, 987 (7th Cir.1996).  Assuming that the Sixth Circuit would agree, Petitioner has made no showing that the failure of an Ohio trial court to follow the Ohio mandate rule when it re-sentences a defendant as it has been ordered to do by an appellate court (even though no mandate has yet issued) could ever result in the conviction of an innocent person.  Certainly that is not the case here where Petitioner pled guilty.

Petitioner also argues this Court may not pretermit the question of jurisdiction because the judgment of a court without subject matter jurisdiction is void.  It is true that even before federal habeas jurisdiction was broadened in *Brown v. Allen*, 344 U.S. 443 (1953), federal habeas courts had authority to inquire whether a court of conviction had subject matter jurisdiction.  *Ex parte Watkins*, 28 U.S. 193 (1830).  But there is no doubt that the Hamilton County Common Pleas Court had subject matter jurisdiction over the felony offenses of which Petitioner was convicted: Ohio Common Pleas courts have exclusive subject matter jurisdiction over felonies committed within their counties.  While there may be case law using the word "jurisdiction" to describe the power or lack of power of an Ohio trial court to act while an appeal is pending, that question is not one of

subject matter jurisdiction.

Ground One for Relief should be dismissed on the merits.

Respondent urges that Ground One should also be dismissed as procedurally defaulted because it was presented in the state courts for the first time on appeal to the Ohio Supreme Court, which did not consider the case on the merits, instead of being presented to the Court of Appeals. This argument is also well taken. As Respondent points out, the Ohio Supreme Court will not hear a claim which has not been raised first in the Court of Appeals. Of course, the Supreme Court did not issue a decision on the merits, but declined to take jurisdiction of the appeal. However, a federal habeas corpus court is not to presume that the Ohio Supreme Court would not have enforced its usual and regularly enforced rule in this case. Where a state court is entirely silent as to its reasons for denying requested relief, as when the Ohio Supreme Court denies leave to file a delayed appeal by form entry, the federal courts assume that the state court would have enforced any applicable procedural bar. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004), *citing Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996). Ground One should also be dismissed as procedurally defaulted.

## Ground Two

In Ground Two, Petitioner asserts his sentence, imposed on remand following *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006). violates his rights under the Ex Post Facto Clause of the United States Constitution.

In *Foster*, the Ohio Supreme Court held that *Blakely v. Washington*, 542 U.S. 296 (2004), rendered Ohio's sentencing scheme unconstitutional. Under that scheme, adopted in Senate Bill 2

in 1996, a criminal defendant could only be sentenced to minimum concurrent terms unless the judge made certain post-verdict findings of fact to justify a longer or consecutive sentence. When Petitioner was initially sentenced in 2004, that it precisely what the trial judge did. But such judicial fact-finding to enhance a sentence was held unconstitutional in *Blakely*. Petitioner's case was still pending on direct appeal when *Foster* was decided and it was therefore, as required by *Foster*, remanded for resentencing. In Foster the Ohio Supreme Court held that the provisions requiring judicial fact-finding were unconstitutional and severed them, leaving trial judges free to sentence within the statutory maxima without making findings of fact. On remand, Petitioner was resentenced to precisely the same sentence he received before.

The key question in *ex post facto* analysis is whether the punishment being imposed is more severe than the punishment assigned to the act when the act to be punished occurred. *United States v. Reese*, 71 F.3d 582 (6th Cir. 1995)(Boggs, J.), quoting *Weaver v. Graham*, 450 U.S. 24 (1981). Here the statutory maxima for the crimes of which Petitioner was convicted were completely unaffected by *Foster*.

Petitioner relies on *Bouie v. City of Columbia*, 378 U.S. 347 (1964) where the Supreme Court struck down as unconstitutional a new judicial construction of a trespass statute which applied it to persons who failed to leave a store after notice, as opposed to the prior construction, in which it applied only to those who received notice prior to entry. Thus in *Bouie* the South Carolina Supreme Court had, by judicial decision, removed an element from the trespass statute and made primary conduct of a citizen, legal when it was done, illegal when it came to be punished. Nothing of the sort happened here: the same elements were required to be proved for theft, identity theft, and engaging in a corrupt practice before and after *Foster*.

In *Rogers v. Tennessee*, 532 U.S. 451 (2001), the Supreme Court distinguished *Bouie* and held that the Due Process Clause does not incorporate as to state judicial decisionmaking all the restrictions imposed on state legislatures by the *Ex Post Facto* Clause. In *Rogers* the Tennessee Supreme Court, as an act of common-law lawmaking, (1) abolished the common-law rule that the death of an assault victim within a year and a day after the assault is a prerequisite to a homicide prosecution and (2) applied the abolition to uphold the murder conviction in that case where death occurred fifteen months after the assault. The United States Supreme Court upheld the conviction, holding that the retroactive abolition of the year-and-a-day rule did not violate Rogers' due process rights. In *Rogers*, the Court described the situations to which it had applied *Bouie*:

> Those decisions instead have uniformly viewed *Bouie* as restricted to its traditional due process roots. In doing so, they have applied *Bouie's* check on retroactive judicial decisionmaking not by reference to the *ex post facto* categories set out in *Calder [v. Bull,* 3 Dall. 386, 1 L. Ed. 648 (1798)], but, rather, in accordance with the more basic and general principle of fair warning that *Bouie* so clearly articulated. See, e.g., *United States v. Lanier*, 520 U.S. 259, 266, 137 L. Ed. 2d 432, 117 S. Ct. 1219 (1997) ("Due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope"); *Marks v. United States*, 430 U.S. at 191-192 (Due process protects against judicial infringement of the "right to fair warning" that certain conduct will give rise to criminal penalties); *Rose v. Locke*, 423 U.S. 48, 53, 46 L. Ed. 2d 185, 96 S. Ct. 243 (1975) (per curiam) (upholding defendant's conviction under statute prohibiting "crimes against nature" because, unlike in *Bouie*, the defendant "[could] make no claim that [the statute] afforded no notice that his conduct might be within its scope"); *Douglas v. Buder*, 412 U.S. 430, 432, 37 L. Ed. 2d 52, 93 S. Ct. 2199 (1973) (per curiam) (trial court's construction of the term "arrest" as including a traffic citation, and application of that construction to defendant to revoke his probation, was unforeseeable and thus violated due process); *Rabe v. Washington*, 405 U.S. 313, 316, 31 L. Ed. 2d 258, 92 S. Ct. 993 (1972) (per curiam) (reversing conviction under state obscenity law because it did "not give fair notice" that the location of the allegedly obscene exhibition was a vital element of the offense).

532 U.S. at 460.

Petitioner relies on *Miller v. Florida*, 482 U.S. 423 (1987), but that case involved an amendment in the governing statute and thus was governed by the strict application of the Ex Post Facto Clause, rather than the Due Process Clause which applies to retroactive judicial decisions.

This Court has repeatedly held that the severance decision in *State v. Foster* does not violate the *Ex Post Facto* Clause. *See, e.g. Smith v. Cook*, Case No. 3:08-cv-107 (S.D. Ohio Aug. 27, 2008)(Merz, M.J.); *Parker v. Warden*, 2008 WL 4547490 (S.D. Ohio, Oct. 10, 2008)(Rice, J.); *Hooks v. Sheets,* 2008 U.S. Dist. LEXIS 77612 (S.D. Ohio Oct. 3, 2008)(Beckwith, C.J.); *Ruhlman v. Warden*, 2009 U.S. Dist. LEXIS 101820 (S.D. Ohio Nov. 2, 2009)(Beckwith, J.) The Ohio Supreme Court has reached the same conclusion. *State v. Elmore*, 122 Ohio St. 3d 472 (2009). Nothing in Petitioner's argument persuades the Court that it should deviate from its prior decisions on this point. Ground Two for relief should be denied on the merits.


**Ground Three**


In Ground Three Petitioner asserts that the sentence deprives him of his rights to merger of sentences under Ohio Revised Code § 2941.25 and his Double Jeopardy rights under the Fifth Amendment.

Respondent correctly argues that the first portion of this claim – violation of Ohio Revised Code § 2941.25 – is not cognizable in federal habeas corpus. Even though, as Petitioner argues, 2941.25 "complements" the Double Jeopardy Clause, it is not enforceable in a habeas corpus action

since its prohibitions are considerably broader than the Double Jeopardy Clause. This Court will not consider whether the sentence here violates Ohio Revised Code § 2941.25 because that is purely a question of state law.

Of course, a claim that a sentence violates the Double Jeopardy Clause is cognizable in habeas corpus. Respondent asserts that Petitioner has not fairly presented a Double Jeopardy claim because in his Petition he cites only Ohio cases for propositions of Ohio law. While that is true of the Petition, the "fair presentation" requirement depends on what was presented to the state courts, not what is in the Petition.

In order to preserve a claim for federal habeas review, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993); *Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991). If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

A petitioner fairly presents a federal habeas claim to the state courts only if he "asserted both the factual and legal basis for his claim. *Hicks v. Straub*, 377 F.3d 538, (6th Cir. 2004), citing *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); and *Picard v. Connor*, 404 U.S. 270, 276, 277-78 (1971).

> In determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, we consider whether: 1) the

-14-

> petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; 2) the petitioner relied upon federal cases employing the constitutional analysis in question; 3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or 4) the petitioner alleged "facts well within the mainstream of [the pertinent] constitutional law."

*Hicks* at 552-53, citing *McMeans*.

Petitioner contends he did fairly present this claim to the Ohio courts, relying on his brief to the Ohio Courts of Appeals (Exhibit 47 to Return of Writ, Doc. No. 16, at 11-12) and on his brief to the Ohio Supreme Court (Exhibit 63 to Return of Writ, Doc. No. 16, at 4.) However upon examination this Court finds no mention of the Double Jeopardy Clause at pages 11-12 of Appellant's Brief on direct appeal[1]. Instead, Petitioner argued that he acted with a single animus and thus could not be subject to consecutive sentences. The single animus argument relates entirely to Ohio Rev. Code § 2941.25 and is not part of Double Jeopardy jurisprudence. Because Petitioner did not fairly present this claim to the Ohio courts, he has procedurally defaulted it and may not have it heard on the merits in this Court.

In his Traverse, Petitioner makes a completely different argument from the one made, so far as this Court can tell, in either the state courts or the Petition, to wit, that theft is a lesser included offense of identity fraud for Double Jeopardy purposes. The Double Jeopardy Clause of the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple

---

[1]Of course, if it was not raised in the Court of Appeals, the Supreme Court would not hear the claim because one may not raise a claim for the first time in the Ohio Supreme Court.

punishments for the same offense
.

*Brown v. Ohio*, 432 U.S. 161, 165(1977), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). The test for whether two offenses constitute the same offense is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688 (1993); *Blockburger v. United States*, 284 U.S. 299 (1932). As it was charged in this case, identity fraud in violation of Ohio Revised Code § 2913.49(B)(1) prohibits possessing the personal identifying information of another person with the intent to hold oneself out as that person. Theft in violation of Ohio Revised Code § 2913.02 prohibits exercising control over the property of another without the consent of the owner. Each of these statutes plainly has an element which is not contained in the other. Thus there is no Double Jeopardy violation in charging a person with violating both.

It is therefore respectfully recommended that Ground Three be dismissed as to the Ohio Revised Code § 2941.25 claim because that claim is not cognizable in federal habeas corpus and as to the Double Jeopardy claim because that claim is both procedurally defaulted and without merit.


## Ground Four


As it is written, Ground Four seems to claim that the Ohio sentencing scheme as it stands after *Foster* deprives him of his right to a jury trial on enhancing facts. That construction is borne out by reading the Traverse where Petitioner seems to be saying that he never waived his right (recognized in *Blakely*) to have a jury determine any facts necessary to impose a sentence beyond the minimum concurrent sentences provided in S.B. 2 without judicial fact-finding. To put it another

way, if Ohio was going to decide not to require judicial fact-finding to exceed the minimum sentence, Petitioner believes that decision had to be made by the legislature, not by the Ohio Supreme Court. As authority for the proposition that this is required by federal constitutional law, Petitioner cites *Cunningham v. California*, 549 U.S. 270 (2007). In *Cunningham*, the Supreme Court considered California's determinate sentencing law which required a trial judge to impose a "middle term" sentence unless the judge found additional facts by a preponderance of the evidence. It found the California statute unconstitutionally deprive the defendant there of his right to a jury trial determination of enhancing facts. Nothing in the *Cunningham* opinion suggests that a change to allow trial judges to impose any term within the statutory maximum without findings of fact would have to be made by the legislature.

The Ohio sentencing scheme post-*Foster* of course does not require any fact finding, by the jury or otherwise, to impose the statutory maximum. The effect of *Foster* is to sever the fact-finding sections because they were found to be unconstitutional. To the extent Petitioner argues this cannot constitutionally be done by a court, he cites no authority. To the extent he argues this cannot be done retroactively, his Ground Four is a reprise of Ground One and without merit for the same reason. Finally, even assuming that the Cunningham court would have found the Foster remedy unconstitutional, *Cunningham* was decided almost a year after *Foster*. Obviously the sentencing decisions in this case, which pre-date *Cunningham*, cannot be objectively unreasonable applications of *Cunningham*, which had not yet been handed down.

Petitioner suggests also that *Oregon v. Ice*, ___ U.S. ___, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009), entitles him to relief because it is in conflict with *Foster*. In *Ice*, the Court held imposition of consecutive sentences for multiple offenses, based on facts found by the court rather than the jury,

does not violate constitutional right to jury trial, since the jury historically played no role in determining consecutive or concurrent sentences and state had sovereign authority to administer its penal system. In essence, the Court held that consecutive sentencing does not come within the rationale of the *Apprendi-Blakely* line of cases, whereas the Ohio Supreme Court had thought in *Foster* that *Blakely* was implicated by consecutive sentencing. *Ice* is obviously of no assistance to Petitioner

Ground Four should therefore be denied on the merits.


## Ground Five


In his Ground Five for Relief, Petitioner asserts he was denied substantive and procedural due process when the trial court did not conduct a hearing on his request to withdraw his guilty plea when the case was remanded for resentencing after *Foster*.

Respondent argues this claim is not cognizable in federal habeas corpus because it involves only a question of state law, to wit, whether the state trial judge abused his discretion in denying Petitioner's request to withdraw his guilty plea.

In the Traverse, Petitioner entangles state and federal law questions. He asserts that this Court must first decide whether his attempt to withdraw his guilty plea was pre- or post-sentence. The undoubted historical fact is that the attempt was made when he was before the trial court for re-sentencing. Ohio R. Crim. P. 32.1 reads in its entirety:

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentencing may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

-18-

Whether that language applies to an attempt to withdraw a guilty plea after an initial sentence but before a resentencing is purely a question of state law. Put another way, there is no federal constitutional right to a particular process on a motion to withdraw a guilty plea. This Court should therefore not attempt to decide whether Petitioner's attempt to withdraw his plea was pre- or post-sentence within the meaning of Ohio R. Crim. P. 32.1.

However, there is a federal constitutional right not to be imprisoned on a guilty plea unless the plea is knowing, intelligent, and voluntary. *Brady v. United States*, 397 U.S. 742 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Id.* at 755. Petitioner asserts that his plea was not voluntary because he did not understand the plea agreement and the "true nature" of the charges against him (Traverse, Doc. No. 35, at 46.) He explains that he was "made to plead guilty to a non-existent predicate act/conduct of Ohio Rev. Code § 2913.49(B)(1), in order to get a conviction under 2923.32(A)(1), pursuant to petitioner's indictment. . . and the prosecutor misrepresented the true nature of the charges to petitioner. . . ."

*Id.*

A state court finding that the plea was proper is accorded a presumption of correctness, unless the transcript of the plea proceeding is inadequate to demonstrate that the plea was voluntary, intelligent and knowing. *Stumpff v. Mitchell,* 372 F.3d 821 (6th Cir. 2004), citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *Dunn v. Simmons*, 877 F.2d 1275, 1277 (6th Cir. 1989), *overruled on other grounds by Parke v. Raley*, 506 U.S. 20 (1992). This Court has reviewed the plea colloquy conducted in this case (Transcript of Nov. 5, 2004) and finds that it is a complete discussion of the charges to which Petitioner was pleading guilty and that at the end of the plea colloquy Judge Kubicki made a finding that the guilty pleas were knowing, intelligent, and voluntary. That finding is entitled to deference in this Court in the absence of a showing that it is improper, a showing Petitioner has not made.

Ground Five should be denied on the merits.

## Ground Six

In Ground Six, Petitioner claims he was denied his substantive and procedural due process rights when the trial court imposed a "mechanical" sentence for engaging in a pattern of corrupt activity, without considering him as an individual.

In his Traverse, Petitioner makes three separate arguments about why his sentence is unconstitutional. The Court will deal with these seriatim.

First of all, Petitioner asserts that a conviction for identity fraud was never intended by the Ohio legislature to be predicate conduct for a conviction of engaging in a pattern of corrupt activity.

This is a question entirely of state law which the state courts have resolved against Petitioner and which this Court cannot reexamine in a habeas corpus case. To put it another way, a federal habeas court is bound by state court interpretations of state law.

Petitioner's second argument is that he is constitutionally entitled to a lesser sentence because he is less culpable than four other persons sentenced for engaging in a pattern of corrupt activity in the Hamilton County Common Pleas Court, but he received the same sentence. As to three of those persons, Petitioner's proof is conversation with them while co-incarcerated at the Chillicothe Correctional Institution. That is inadmissible hearsay evidence and is excluded. But even if it were admitted, it would not establish Petitioner's point. There is no constitutional right to the sort of individualized sentencing Petitioner claims. The Eighth Amendment does not require a strict proportionality between the crime and sentence. Rather, it only prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)(plurality opinion); *United States v. Marks,* 209 F.3d 577, 583 (6th Cir. 2000). A sentence within the statutory maximum generally does not constitute cruel and unusual punishment. *Austin v. Jackson,* 213 F. 3d 298 (6th Cir. 2000);*United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995). At the time of his guilty plea, Petitioner was advised of the maximum possible sentence for his offenses, a sentence far greater than the one he actually received. Nothing more is required by the United States Constitution.

Finally, Petitioner repeats his citation to *Oregon v. Ice, supra,* but that case is not helpful to him because it confirms the power of state trial judges to impose consecutive sentences, if authorized by state law, without consideration of the *Apprendi-Blakley* line of cases.

Ground Six for Relief is without merit.

## Ground Seven

In Ground Seven Petitioner claims the benefit of the rule of lenity, arguing this entitles him to minimum, concurrent sentences.

The rule of lenity is a rule of statutory construction which requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them. *United States v. Santos,* 128 S. Ct. 2020, 2025 (2008)*, United States v. Gradwell,* 243 U.S. 476, 485 (1917); *McBoyle v. United States*, 283 U.S. 25, 27 (1931); *United States v. Bass*, 404 U.S. 336, 347-349 (1971). It is not, however, a constitutionally-mandated rule. While Ohio has adopted the rule of lenity by statute (Ohio Rev. Code § 2901.04), whether that state statute applies to Petitioner's situation is purely a question of state law which this habeas corpus court may not consider. As Petitioner notes, the Ohio Supreme Court has held to th contrary in *Elmore, supra.*

Petitioner responds, however, that the rule of lenity embodies the concept of fair warning and his claim is that he did not receive fair warning. But the "fair warning" to which Petitioner seems to claim he was entitled is a warning that the Ohio Supreme Court might decide *Foster* the way it did. That is, he claims in the absence of a fair warning that *Foster* might be decided the way it was, he is entitled to minimum concurrent sentences.

The "fair warning" language is part of the vagueness doctrine which holds that a person may not constitutionally be punished criminally under a statute so vague it does not apprise him of what conduct is prohibited. *See Connally v. General Constr. Co.*, 269 U.S. 385, 391(1926); *accord Kolender v. Lawson*, 461 U.S. 352, 357(1983); *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). That certainly is not what is involved here: the Ohio prohibitory statutes which Petitioner pled guilty

to violating plainly forbid the conduct in which he engaged. There is no portion of the vagueness doctrine which commands that a criminal defendant be warned that a state supreme court may apply a United States Supreme Court precedent in a way the defendant did not expect, especially when the elements of the crimes are the same before and after the decision and the statutory maximum penalties are the same.

Ground Seven should be dismissed with prejudice.

## Ground Eight

In Ground Eight Petitioner argues *Foster* renders his guilty plea involuntary because it created a retroactive change in sentencing criteria. In his Traverse, he adds he never received "real notice of the true charges against him" (Traverse, Doc. No. 35, at 60.)

The first part of this claim was actually decided by the Court of Appeals in this case when it held that the later change in the law did not render the prior plea involuntary. *State v. Ashipa*, 2007 Ohio 2245 (Ohio App. 1st Dist. May 11, 2007) at ¶¶ 18-19. The Court of Appeals relied on its prior holding to that effect in *State v. Lochett*, 2007 Ohio 308 )Ohio App. 1st Dist. Jan. 26, 2007), which in turn relied on *Brady v. United States, supra,* holding that a plea does not become involuntary because later changes in the law show it was based on a faulty premise. Petitioner has not shown how the Court of Appeals decision on the first branch of Ground Eight was an objectively unreasonable application of *Brady* or any other clearly established United States Supreme Court precedent.

As the Court understands Petitioner's second branch of Ground Eight, it is that his plea was

not voluntary because he did not then understand what he now understands, to wit, that identity fraud in violation of Ohio Rev. Code § 2913.49 is not listed as a predicate offense in Ohio Rev. Code § 2923.31. However, when the Court considers the entire plea colloquy and the explanation Petitioner was given of the offenses to which he was pleading guilty, it is clear that the prosecutor was not relying on the counts of identity fraud as sufficient to provide the required predicate acts for the conviction of engaging in a pattern of corrupt activity. Simply put, the indictment is broader than that.

The second branch of this claim includes the sub-claim that the trial judge did not comply precisely with Ohio R. Crim. P. 11(c) in taking the guilty plea. This is a question of Ohio law. All that is required for compliance with the United States Constitution is, as set forth above from *Brady*, that the plea be knowing, intelligent, and voluntary.

The third branch of this claim appears to be a reprise of the first branch, to wit, that the retroactive application of *Foster* rendered the plea involuntary.

Ground Eight for Relief should be denied on the merits.

**Ground Nine**

In Ground Nine Petitioner complains that the trial court violated both his Equal Protection rights and his Fourteenth Amendment "mandate rule" rights when it imposed the sentence it did on remand.

Respondent asserts this claim is barred by Petitioner's failure to raise it in the state courts, having made a similar claim only as an underlying omitted assignment of error in a petition for reopening to raise a claim of ineffective assistance of appellate counsel. As Petitioner points out, the Equal Protection portion of this claim was in fact raised on one of his direct appeals (Appellant's Brief, Ex. 70 to Return of Writ) and decided on the merits by the Court of Appeals (Judgment Entry, Ex. 72 to Return of Writ).

Petitioner's equal protection claim asserts that he is entitled to the same sentence imposed on Graham Washatka, to wit, the mandatory minimum. *See State v. Washatka,* 2006 WL 1495223 (Ohio App. 8th Dist). However, in *Washatka* the Eighth District Court of Appeals on the *Foster* remand had ordered that the mandatory minimum sentence be imposed whereas the First District Court of Appeals had not made such an order on Petitioner's *Foster* remand. But there is no Equal Protection jurisprudence which commands that persons receiving sentences even for the same crime in different appellate districts in the same State are entitled to the same sentence. The Ohio Supreme Court's affirmance here means nothing more than that both appellate courts acted within the discretion left to them by *Foster*. To hold otherwise would essentially be to convert whichever Court of Appeals rules on a question first into a de facto supreme court.

Ground Nine is without merit.

# Ground Ten

In his tenth Ground for Relief, Petitioner asserts that the trial court violated his due process rights by permitting amendment of the indictment and his counsel provided ineffective assistance when he did not object.

Both of these claims were fairly presented to the Ohio Court of Appeals and therefore not barred from merit review on that basis. However, to the extent Petitioner now attempts to convert this claim to be essentially the same as the claim made above that the indictment was void because the original indictment did not charge an offense, that claim is barred by Petitioner's failure to present it as part of his claimed error relating to **amendment** of the indictment or it is subsumed under the prior claim. In other words, the Court will analyze Ground Ten only as it relates to the amendments made to the indictment.

Petitioner refers to this claim as a Fifth and Sixth Amendment claim. There is no Fifth Amendment right to indictment by a grand jury in state court. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972) *Gerstein v. Pugh*, 420 U.S. 103 (1975); *see also Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result). Petitioner does have a Fourteenth Amendment due process right to be informed of the charges against him and the Court assumes that is what he is referring to when he cites the Fifth Amendment.

On this Ground for Relief thus construed, the Court of Appeals held:

> [*P20] In his eighth assignment of error, Ashipa claims that the trial court erred by permitting the state to amend the indictments in both cases and that his counsel was ineffective for failing to object to these amendments.

[*P21] Ashipa's argument lacks merit because he pleaded guilty to the amended indictments without objecting to the amendments. 17 Moreover, the amendments in both cases were in accordance with Crim.R. 7(D). The trial court addressed the amendments at the plea hearing, and Ashipa indicated that he understood the changes. Ashipa affirmatively stated that he was entering his plea of his own free will. 18 Because Ashipa cannot demonstrate that he was prejudiced by counsel's failure to object to the amendments, we cannot say that he received ineffective assistance from defense counsel. 19 As a result, we overrule his eighth assignment of error.

*State v. Ashipa*, 2007 Ohio 2245 (Ohio App. 1st Dist. May 11, 2007).

Petitioner has failed to show any way in which this holding is contrary to or an objectively unreasonable application of clearly established Supreme Court law. In particular, the motion to amend had been pending for several months before it was ruled on and was in fact never objected to. It did not change the elements of the offenses, but merely clarified details, making it better notice to Petitioner than the original indictment. And Petitioner has not begun to suggest how he was prejudiced by his attorney's failure to object.

Ground Ten should be dismissed on the merits.


**Ground Eleven**


In Ground Eleven, Petitioner appears to combine claims under the Fourth and Sixth Amendments, to wit, that the search warrant affidavit in suit was perjured and the warrant should therefore have been quashed and that his attorney would have uncovered sufficient evidence to do that had he provided effective assistance.

Respondent claims both branches of this Ground for Relief are procedurally defaulted in that they were never presented to the state courts and could not now be presented because all

opportunities to do so have been exhausted. Petitioner admits that there was never a hearing on a motion to suppress evidence against him on grounds of a perjured affidavit; his counsel declined to join in such a motion filed by a co-defendant (See Traverse, Doc. No. 35, at 83).

Petitioner claims he attempted to present his ineffective assistance of trial counsel claim related to the Fourth Amendment in a petition for post-conviction relief under Ohio Rev. Code § 2953.21. *Id.* He claims that he filed that petition, along with requests for admissions under Ohio R. Civ. P. 36, on November 3, 2006, which he claims was 136 days after the trial transcripts were filed in the Court of Appeals from his May 9, 2006, resentencing. *Id.* He asserts the trial transcript was filed June 20, 2006. *Id.* at 84. Of course Ohio Rev. Code § 2953.21 provides that a post-conviction petition must be filed within 180 days of the filing of the transcript and November 3, 2006, is only 136 days after June 20, 2006.

The State opposed the petition on the grounds it was untimely, reasoning that the relevant 180-day period ran from filing the transcript from the judgment about which complaint was being made, i.e., the conviction entered in November, 2004. (Supplement to Return of Writ, Doc. No. 20, at Ex. 96.) Judge Kubicki agreed. *Id.* at 97. Petitioner admits that that ruling was affirmed on appeal, although he complains of the State's not having filed the relevant opinions from the Court of Appeals and the Ohio Supreme Court (Traverse, Doc. No. 35, at 84.)

This Court concludes that the ineffective assistance of trial counsel branch of Ground Eleven is barred from merit consideration in this Court by Petitioner's procedural default in presenting it to the state courts, to wit, by failing to present it within the time allowed after the first appeal. Interpretation of the 180-day time requirement in Ohio Rev. Code § 2953.21 is certainly a question of state law for determination by the state courts. There is no question that Petitioner did not file

his post-conviction petition within 180 days of the filing of the transcript on the first appeal, and it is in the pre-trial proceedings before that trial that he alleges he received ineffective assistance of trial counsel relating to his Fourth Amendment claim. Applying the *Maupin* analysis, it is clear that Ohio has the 180-day time limit and that the state courts relied on that time limit to dismiss the petition. That rule is plainly independent of the federal nature of the claims its application impacts and the States have an adequate finality interest in requiring post-conviction petitions to be timely filed. Petitioner has not suggested any excusing cause and prejudice.

Ground Eleven should be dismissed with prejudice as procedurally defaulted.

## Ground Twelve

In his twelfth Ground for Relief, Petitioner asserts his trial counsel provided ineffective assistance when he failed to request exculpatory evidence.

This claim was presented to the state court for the first time as part of Petitioner's post-conviction relief petition under Ohio Rev. Code § 2953.21. While it is, of course, appropriate to present ineffective assistance of trial counsel claims which depend on material outside the record for the first time in such a petition, the petition was dismissed as untimely, as noted under Ground Eleven. No additional analysis is required to conclude that this claim is procedurally defaulted on the same basis as Ground Eleven.

## Ground Thirteen

In Ground Thirteen Petitioner claims he received ineffective assistance of appellate counsel when he failed to assign as error that the judgment entry of June 11, 2007, was not a final appealable order in that it did not conform to Ohio Cri. R. 32(C).

Petitioner appropriately raised this claim in an application for reopening under Ohio R. App. P. 26(B), In denying that application, the Court of Appeals held that "the judgment did conform to Crim. R. 32(C)." (Entry Denying Application for Reopening, Ex. 84 to Doc. No. 16, at 2.)

Petitioner seems to believe that the Court of Appeals in making this decision did not address his constitutional claim. While the holding is brief, it is adequate. To prevail on a claim of ineffective assistance of appellate counsel, a defendant must show that counsel's performance was deficient and that he was prejudiced thereby. *Strickland, supra.* By finding that the omitted assignment of error would have been meritless, the Court of Appeals essentially held that there was no prejudice from failure to raise it.

Petitioner argues that Ohio R. Crim. P. 32(C) is plain and unambiguous and he is entitled to its benefit as written by the legislature[2] (Traverse, Doc. No. 35, at 98). However, the meaning of Rule 32 is a question of Ohio law for the Ohio courts to decide; this Court must accept their interpretation as binding.

Because the Court of Appeals decided the federal constitutional question – whether Petitioner received ineffective assistance of appellate counsel when his counsel failed to raise this omitted assignment of error – their opinion is entitled to AEDPA deference. Petitioner has not

---

[2]Actually, the Ohio Rules of Criminal Procedure are promulgated by the Ohio Supreme Court under the Modern Courts Amendment to the Ohio Constitution. Initial drafting is done by the Supreme Court's Rules Advisory Committee/Commission and final approval of the language is by the Supreme Court. The General Assembly has a right of veto.

overcome that deference by showing that the Court of Appeals decision is contrary to or an unreasonable application of *Strickland* and its progeny.

Ground Thirteen should be dismissed with prejudice.

## Ground Fourteen

In Ground Fourteen, Petitioner asserts he received ineffective assistance of appellate counsel in that his appellate counsel did not make a claim that the *Foster* remedy violated Petitioner's due process and ex post facto rights.

In considering this claim as made as a part of Petitioner's application for reopening under Ohio R. App. P. 36(B), the Court of Appeals held that, rather than omitting these claims, appellate counsel had in fact raised them and they had been rejected on the merits. (Entry Denying Application for Reopening, Ex. 84 to Doc. No. 16, at 2.)

Petitioner points to no place in the record which refutes the finding of the Court of Appeals that these claims were raised and rejected. Moreover, the claims are without merit, as set forth under Ground Two above.

Ground Fourteen is without merit and should be dismissed with prejudice.

## Ground Fifteen

In Ground Fifteen Petitioner argues that he received ineffective assistance of appellate counsel when his appellate counsel failed to argue for merger of his convictions under Ohio Rev. Code § 2941.25 and failed to raise a Double Jeopardy claim.

As held above, Petitioner has no valid Double Jeopardy claim on the basis of his conviction: all three offenses of which he was convicted have differing elements, thereby satisfying the controlling *Blockburger* test. It could not have been ineffective assistance of appellate counsel to fail to raise a claim which would have failed.

As the Court understands Petitioner's argument with relation to Ohio Rev. Code § 2941.25, it is that the trial court should have merged the theft and identity fraud charges relating to victim James Duggan charged in Case No. B-0403917 because these were similar offenses committed with the same animus and that appellate counsel was ineffective when he did not raised this claim. This is at least the way the claim is argued in the Traverse (Doc. No. 35 at 102-103).

Petitioner raised this claim in his application for reopening (Doc. No. 16-6 at 11). As noted in the State's opposition to the reopening, this single animus argument had been considered by the Court of Appeals and rejected in his appeal in Case No. C-060411. Thus on the application for reopening of this appeal, counsel could not have been ineffective for failure to raise a claim which would be barred by *res judicata* (See Response to Application for Reopening, Doc. No. 16-6, at 24.) The Court of Appeals did not expressly discuss this proposed assignment of error in denying the application for reopening. The question of whether multiple convictions violated Ohio Rev. Code § 2941.25 is a question of state law only. Thus while this Court does not give AEDPA deference

to the conclusory denial of the application for reopening, the Court accepts the State's argument that any such claim would have been barred by *res judicata* and it was therefore not ineffective assistance of appellate counsel to fail to raise it on this particular appeal.

Ground Fifteen is without merit and should be dismissed with prejudice.

## Ground Sixteen

In Ground Sixteen Petitioner argues he received ineffective assistance of appellate counsel when his appellate attorney failed to raise as an assignment of error the failure to the trial court to apply the rule of lenity. Here the Court of Appeals, as with Ground Fourteen, found that the claim had been raised and rejected on the merits.

On the basis of the same analysis as Ground Fourteen, then, Ground Sixteen is without merit.

## Conclusion

Having concluded that the Petition is without merit, the Magistrate Judge respectfully recommends that it be dismissed in its entirety with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should not be permitted to proceed on appeal *in forma pauperis* and should not be granted a certificate of appealability.

The parties having filed extremely long pleadings in this matter are directed to S. D. Ohio Civ. R. 7.2(a)(3) which precludes filings in excess of twenty pages unless they are accompanied by a combined table of contents and succinct, clear and accurate summary, not to exceed five pages.

**This limitation will be rigorously enforced as to all further filings in this case.**

February 11, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Documents\Ashipa habeas R&R.wpd